**Opinion issued March 13, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00961-CR

———————————

**ROBERT CASTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1259905**

---

## MEMORANDUM OPINION

A jury found Robert Castillo guilty of capital murder and sentenced him to confinement for life.[1] Castillo raises five issues on appeal. First, Castillo contends that the evidence was insufficient to support his conviction. In his second, third,

---

[1] TEX. PENAL CODE ANN. § 19.03 (West Supp. 2013).

and fourth issues, Castillo contends that the trial court erred in denying his motion to suppress his videotaped statement to police. He argues that his statement was involuntary, he invoked his right to counsel, and he did not intelligently waive his *Miranda* rights.[2] In his fifth issue, Castillo contends that the trial court erred in denying his request to instruct the jury on the law of accomplice witnesses. We affirm.

## Background

Castillo, his brother F. "Junior" Castillo, and Chris Washington had been drinking late one evening when they went for a drive in a small sedan. While driving, Castillo saw a white Cadillac with expensive rims swerving on the road. Castillo decided that he wanted the rims, so they followed it. According to Castillo, they lost sight of the Cadillac but later found it parked with the engine still running and the driver, David Rodriguez, still in the car. Castillo told police that he and Chris got into the car.

Chris held Rodriguez at gunpoint in the backseat, and Castillo drove them to a secluded road. Junior followed in the small sedan. In his statement to police, Castillo admitted that Rodriguez plead with them not to hurt him, but claimed that Chris shot Rodriguez in the head. They tried unsuccessfully to remove the Cadillac's rims. When they could not remove the rims, Castillo called his

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013).

2

girlfriend, Narsha Washington, and asked her if she had a lug wrench. Then the men ransacked the car for valuables.

Just after midnight, a husband and wife familiar with the neighborhood were driving to a fast-food restaurant and noticed a white Cadillac parked next to a smaller sedan on a dark street. The couple testified that they saw three people standing around the Cadillac. On their way home from the restaurant, the couple again saw the Cadillac, but the people and the smaller sedan were gone. The couple returned home and called police to report what they had seen.

In response to the call, Harris County Sheriff Deputy C. Bilinovich was dispatched to the area. She saw two vehicles matching the reported description run a stop sign. When Deputy Bilinovich flashed the lights on her squad car, Castillo increased speed and Bilinovich chased him. Bilinovich testified that when the Cadillac reached a dead end street, two people jumped out of the car while it was still moving. Bilinovich caught Chris Washington; Castillo escaped. When investigators searched the Cadillac, they found that several items had been stripped from the car. They also found Rodriguez's lying in a field nearby the car.

The next morning, Castillo called Narsha Washington and told her that Chris had been arrested. Later that day, Castillo drove his pickup truck to Narsha's apartment, and the two went to get some pain pills. Narsha testified that during their car ride Castillo told her that he, her brother, Chris, and Junior had stolen a

3

man's car the previous night. He also told her that "they had to kill a guy." Narsha testified that Castillo seemed nervous.

Harris County Deputy Sheriff R. Gonzales investigated Rodriguez's death. He quickly identified Castillo, Chris, and Junior as suspects. Deputy Gonzales contacted Narsha to discuss Rodriguez's murder. At that time, law enforcement knew from the emergency phone call that two vehicles had been on the secluded road. They also had recovered a cigarette butt from the scene that was the same brand that Castillo smoked, but they had no other physical evidence related to the murderer's identity. Narsha told Deputy Gonzales that on the night of the murder Castillo had called her and asked her for a lug wrench. She also said that Castillo admitted to the murder.

Police arrested Castillo at his apartment. They brought him to a police station where Deputy Gonzales and Harris County Sheriff's Office Investigator M. Quintanilla questioned him about Rodriguez's murder. Gonzales and Quintanilla video recorded the entire interview. After Gonzales informed Castillo of his rights, Castillo answered questions for approximately four hours. During the interview, Castillo admitted that he stole Rodriguez's car because he wanted the rims, but he denied any responsibility for Rodriguez's murder. He said that Chris held Rodriguez at gunpoint in the backseat of the car and later shot him. During the

4

interview, Deputy Gonzales played two recorded audio statements from Narsha and Chris who blamed Castillo for Rodriguez's murder.

Castillo was charged with capital murder. While awaiting trial, Castillo met Bronson Jones in jail. Jones later testified that Castillo told him details about the murder and claimed that he could not get convicted because he did not have an attorney present during his interview.

Before trial, Castillo moved to suppress his statement. He argued that he invoked his right to counsel, did not intelligently waive his rights, and did not understand the questions because he was intoxicated. The trial court denied his motion to suppress. A jury convicted Castillo of capital murder and assessed punishment at confinement for life.

Castillo timely appealed.

## Sufficiency of the Evidence

In his first issue, Castillo contends that the evidence was "legally insufficient" to prove beyond a reasonable doubt that he committed capital murder because there was no forensic evidence connecting him to the crime and there were numerous factual inconsistencies in the witnesses' testimony.[3]

---

[3] A person commits capital murder when he "intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation . . . ." TEX. PENAL CODE ANN. § 19.03 (West Supp. 2013). A person may also be guilty as a party to capital murder if he commits the offense by his own conduct, by the conduct of

5

## A.    Standard of review

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 899–902 (Tex. Crim. App. 2010) (plurality op.); *Ervin v. State*, 331 S.W.3d 49, 53–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We defer to the jury's reconciliation of conflicts in testimony, the weight given to the evidence, and any reasonable inferences drawn from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).

The State bears the burden of proving each element of a charged offense. TEX. PENAL CODE ANN. § 2.01 (West 2011); *see also Mullaney v. Wilbur*, 421 U.S. 684, 701, 95 S. Ct. 1881, 1891 (1975) (describing the prosecutor's burden as "essential" to our system of criminal justice). Direct and circumstantial evidence are equally probative in establishing guilt, and circumstantial evidence alone can be sufficient. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) (holding

---

another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a) (West 2011).

6

"cumulative force" of all circumstantial evidence can be sufficient to support guilty verdict).

**B.     Sufficient evidence of capital murder**

Both Jones and Narsha testified that Castillo murdered Rodriguez while trying to steal the rims off of his Cadillac. Narsha testified that, the day after Rodriguez's murder, Castillo told her that he and her brother, Chris, had stolen a car and had gotten into a high-speed car chase with police. Castillo also admitted that he had killed the owner of the car. Later that day, Castillo visited Narsha and told her that he had hurt his arm the night before and needed to get pain medicine. While riding in the car, Castillo told Narsha that he killed a man after "jacking" his car.

According to Jones, Castillo told him in jail that Castillo believed the only people who saw him near the Cadillac when Rodriguez was murdered were too far away to "really identify" him. According to Jones, Castillo also removed the shell casing from the murder scene. Though Castillo argues that Jones's testimony conflicts with his claim that Chris murdered Rodriguez, we presume that the jury resolved conflicts in testimony in favor of the prosecution and defer to its rational resolution of those conflicts. *See Clayton*, 235 S.W.3d at 778–79 (deferring to jury's determination of witness credibility and upholding murder conviction).

7

Castillo admitted that he was at the scene when the murder occurred. Evidence placing a defendant near or at a crime scene before the crime was committed can be sufficient to prove murder. *Palomo v. State*, 352 S.W.3d 87, 90–91 (Tex. App.—Houston [14th Dist.] 2011, pet ref'd) (holding sufficient evidence of murder when defendant was seen at location prior to murder); *see also Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996) (upholding conviction when defendant was seen near scene before and after murder). Furthermore, Castillo admitted that he stole Rodriguez's Cadillac and tried to flee when a police officer flashed her lights and tried to pull him over. *See Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn.").

The jury also could have relied on circumstantial evidence of a freshly tossed cigarette butt found near Rodriguez's body that matched the brand Castillo smokes. *See Temple v. State*, 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013) ("[I]t is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.").

The jury also heard evidence to support the conclusion that Castillo robbed Rodriguez. When police searched the Cadillac, they found that it had been "ransacked." They found that there were two tire irons in the front seat, the car had

8

been stripped of its electrical components, and an air-conditioning vent from the front dash had been tossed into the trunk.

We conclude that, when viewed in the light most favorable to the verdict, the evidence was sufficient to support Castillo's conviction. Therefore, a reasonable jury could have concluded, beyond a reasonable doubt, that Castillo was guilty of murdering Rodriquez.

We overrule Castillo's first issue.

## Motion to Suppress

In his second, third, and fourth issues, Castillo contends that the trial court erred in denying his motion to suppress his statement. Castillo contends that the statement was inadmissible because (1) he did not make the statement voluntarily and did not intentionally waive his *Miranda* rights, and (2) he invoked his right to counsel. We address each of these contentions in turn.

### A.    Standard of review

When a defendant challenges a trial court's denial of a motion to suppress a statement, we review the trial court's ruling for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) (citing *Valiterra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010). We grant almost total deference to a trial court's determinations of historical facts. *Id*. We use the same deferential standard for mixed questions of law and fact that require evaluation of credibility

9

and demeanor. *Id*. However, we review de novo all other mixed questions of law and fact that do not fall within that category. *Id*. When the trial court enters no findings of facts, we view the evidence in the light most favorable to the trial court's ruling to deny the motion to suppress. *Id*. We imply all necessary findings of fact that are supported by the record. *Valiterra*, 310 S.W.3d at 447–48. And, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

## B. Voluntariness of statement

In his second and fourth issues, Castillo contends that his statement was involuntary and that he never waived his rights under *Miranda* and article 38.22 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013). Specifically, Castillo argues that his statement was involuntary because law enforcement subjected him to "lengthy" questioning, law enforcement did not attempt to treat his injuries, and he was intoxicated and, therefore, was unable to voluntarily waive his rights. The State responds that the totality of the circumstances establishes that Castillo voluntarily gave his statement describing his involvement in Rodriguez's robbery and murder.

The Fifth Amendment to the United States Constitution provides that a criminal defendant has the right not to be "compelled in any criminal case to be a

witness against himself . . . ." U.S. CONST. amend V. In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), the United States Supreme Court interpreted this right to include the right to remain silent during a police interrogation, to have an attorney present during custodial interrogation, and to be informed of these rights before any custodial interrogation. 384 U.S. at 478–79, 86 S. Ct. at 1630. Article 38.22 of the Texas Code of Criminal Procedure statutorily incorporates those rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013); *see Ervin*, 333 S.W.3d at 204; *see also Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008) ("A statement that is 'involuntary' as a matter of constitutional law is also 'involuntary' under [a]rticle 38.22 . . . ."). When law enforcement fails to comply with these requirements, the State may not use the statement during the prosecution of its case. *See Ervin*, 333 S.W.3d at 204; *see also Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Once a suspect is informed of his rights, his statement is admissible if he waives his rights by speaking "freely and voluntarily without any compelling influences." *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22.

Whether a defendant's statement is voluntary presents a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000); *see also Juarez v. State*, 409 S.W.3d 156, 164 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). The State has the burden of proving by a preponderance of the evidence that

11

a defendant has validly waived his rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). A defendant need not explicitly waive his rights, nor must he express his waiver in writing. *Id*. A defendant's actions and words may be sufficient to infer waiver. *Id*. When a defendant alleges that he involuntarily waived his rights and made a statement, we consider the totality of the circumstances including the defendant's experience, background, and conduct. *Leza v. State*, 351 S.W.3d 344, 352 (Tex. Crim. App. 2011). A statement is involuntary if it was the product of intimidation, coercion, or deception. *Joseph*, 309 S.W.3d at 26; *Juarez*, 409 S.W.3d at 164–65.

Section six of article 38.22 requires the trial court to hold a hearing outside the jury's presence to determine whether the defendant voluntarily made his statement. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West Supp. 2013). The trial court here found that Castillo's statement was voluntary. And, as required by that section, the trial court instructed the jury that it should not consider the statement for any purpose unless it believed beyond a reasonable doubt that Castillo voluntarily made the statement. *Id*.

### 1. Statement not involuntary due to length of questioning

It is undisputed that Castillo was in custody during the interview and would not have been able to leave after giving his statement. Throughout the interview, however, law enforcement offered him water and coffee several times and gave

him multiple opportunities to use the restroom. *See Ervin*, 333 S.W.3d at 205 (listing situations that constitute *Miranda* custody); *see also Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009) (stating proper inquiry to determine whether an interview is custodial is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.") (citation omitted). Castillo offers no evidence that police used coercion or deception to elicit his statement while he was in custody. *See Joseph*, 309 S.W.3d at 26 (finding defendant waived right when he made "free and deliberate choice without intimidation, coercion, or deception" to answer questions). Accordingly, we hold that the mere length of the questioning does not require the conclusion that Castillo's statement was involuntary.

### 2. Statement not involuntary due to alleged lack of medical treatment

Castillo claims that he had visible injuries and that law enforcement affirmatively denied him access to medical treatment. He also testified at the motion to suppress hearing that police beat him during a trip to the restroom. Castillo's testimony conflicts with testimony from Deputy Gonzales and Investigator Quintanilla, who both testified that Castillo had no visible injuries that required medical attention. *Cf. Ross*, 32 S.W.3d at 855 (deferring to factfinder's discretion in weighing witness credibility when reviewing trial court's denial of motion to suppress evidence). Moreover, the jury saw the video of his statement

13

and the judge could have made his own determination as to whether Castillo was injured during the interview. We must defer to the trial court's determination about a defendant's credibility. *See Turrubiate*, 399 S.W.3d at 150 (granting almost total deference to trial court's determinations of credibility). Accordingly, we conclude that Castillo's controverted allegation of untreated injuries did not render his confession involuntary.

### 3. Statement not involuntary because of intoxication

Castillo also argues that he was intoxicated, did not understand why he was being questioning, and ignorantly continued to talk to law enforcement. Alleged ignorance of the purpose of law enforcement questioning is insufficient to render a defendant's waiver of *Miranda* rights "involuntary or insufficiently informed." *Leza*, 351 S.W.3d at 350. In *Leza*, the Court of Criminal Appeals emphasized that when a defendant acknowledges that he understands his rights, he agrees that "anything" may be used against him. *Id*. (citing *Colorado v. Spring*, 479 U.S. 564, 577, 107 S. Ct. 851, 859 (1987)).

Before Castillo made any statement, Officer Gonzales informed him of his rights. Officer Gonzales confirmed that Castillo said he understood those rights. After Castillo acknowledged that he understood his rights, he answered questions for hours. Castillo presents no evidence that he was unable to intelligently understand the officers' questions or instructions. Furthermore, neither Officer

14

Gonzales nor Investigator Quintanilla testified that Castillo appeared to be intoxicated. *See Leza*, 351 S.W.3d at 352 ("Circumstances unattributable to the police that nevertheless adversely impact an accused's ability to resist reasonable police entreaties to waive his statutory rights, such as intoxication, are 'factors' in the voluntariness inquiry, though they are usually not enough, by themselves, to render a statement inadmissible under Article 38.22[.]") (citation omitted). We presume that the court reconciled any inconsistencies within the witnesses' testimony and defer to its voluntariness finding. Accordingly, we hold that Castillo's claim of intoxication does not require a finding that he was unable to give a voluntary statement.

We conclude that the trial court did not abuse its discretion in finding that Castillo voluntarily waived his rights and voluntarily gave his statement.

## C. Invocation of right to counsel

In his third issue, Castillo argues that his repeated requests to speak with his wife "obvious[ly]" invoked his right to counsel. He does not contend that he ever asked to speak with his lawyer. The State responds that Castillo's requests to see his wife did not unambiguously invoke his right to counsel.

The Fifth and Fourteenth Amendments to the United States Constitution provide a defendant the right to counsel during a custodial interrogation. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; U.S. CONST. amends. V, XIV. To benefit from

15

this right, a defendant must affirmatively invoke it: "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). While the defendant need not say "magic words," his alleged invocation must, under all of the facts and circumstances, be construed as invoking his right to counsel. *Russell v. State*, 727 S.W.2d 573, 575 (Tex. Crim. App. 1987); *also compare Reed v. State*, 227 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (asking whether "he could get a lawyer if he wanted one" insufficient to invoke right), *with State v. Gobert*, 275 S.W.3d 888, 892–93 (Tex. Crim. App. 2009) (stating "I don't want to give up any right" clearly invoked right to counsel).

When a defendant alleges that he invoked his right to counsel, we review the totality of the circumstances surrounding the interrogation and alleged invocation and determine whether the defendant actually invoked his right. *Dinkins*, 894 S.W.2d at 351; *Reed*, 227 S.W.3d at 116. If a defendant clearly invokes his right to counsel, law enforcement must cease questioning related to that case. *Connecticut v. Barrett*, 479 U.S. 523, 528, 107 S. Ct. 828, 831 (1987); *Gobert*, 275 S.W.3d at 893.

Castillo's requests to speak with his wife were not unambiguous invocations of his right to counsel because a reasonable officer would not have understood

16

such statements as requests for an attorney. *See Reed*, 227 S.W.3d at 116 (stating whether defendant invokes right turns upon "whether a reasonable officer, under similar circumstances, would have understood the statement to be a request for an attorney . . . ."). Castillo cites no authority that would support an opposite conclusion. Castillo simply did not ask to speak to a lawyer.[4] Under these circumstances we conclude that the trial court did not abuse its discretion in finding that Castillo did not unambiguously invoke his right to counsel.

Because the factfinder reasonably could have concluded that Castillo voluntarily waived his rights, voluntarily gave his statement, and did not invoke his right to counsel, we conclude the trial court did not abuse its discretion in denying Castillo's motion to suppress.

Accordingly, we overrule his second, third, and fourth issues.

### Jury Instruction

In his fifth issue, Castillo contends that the trial court erred by not instructing the jury on the law of accomplice witnesses regarding evidence of out-of-court statements made by Chris.

---

[4] Castillo only twice mentioned the word "attorney" and did so at the end of the four-hour interview. Specifically, Castillo asked whether "they'll assign[ ] me an attorney." Shortly thereafter, Castillo explained that he wanted to speak to his wife to tell her to "sell my truck and my tires . . . to pay for an attorney." These references occurred in the last minute of the interview.

17

## A.     Standard of review

A trial court must deliver to the jury a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). When a defendant alleges that the trial court erred in instructing the jury, we engage in a two-step inquiry, asking first whether there was any error. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If we determine that there was error, we must decide whether the error was harmful. *Id*. Harmful error requires a reversal of the conviction. *Id*.

## B.     Jury instruction analysis

An accomplice witness is "one who participated with another before, during, or after the commission of a crime and can be prosecuted for the same offense with which the accused is charged." *Nguyen v. State*, 177 S.W.3d 659, 668 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citation omitted). When the State offers an accomplice witness, article 38.14 of the Code of Criminal Procedure requires the trial court to instruct the jury on the accomplice rule. *Id*. at 669; *see also Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002); TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Article 38.14 of the Code of Criminal Procedure states:

> A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

18

TEX. CODE. CRIM. PROC. ANN. art. 38.14. Article 38.14 does not apply to an accomplice's out-of-court statements. *Nguyen*, 177 S.W.3d at 669 (citing *Bingham v. State*, 913 S.W.2d 208, 210–13 (Tex. Crim. App. 1995)).

Castillo argues that the term "testimony" includes accomplice statements to police outside of trial proceedings and, therefore, Chris's recorded statement required an accomplice instruction. Specifically, Castillo argues that while the video recording of his statement was played at trial, the jury also heard portions of an audio recording of Chris's statement, in which Chris identified Castillo as Rodriguez's murderer. Chris, however, did not testify at trial and his statement to police was not directly admitted into evidence. Because article 38.14 only applies to testimony and not to out-of-court statements, Chris's statement did not require an accomplice instruction.[5] *See Nguyen*, 177 S.W.3d at 669 (holding accomplice instruction not required because testimony was not adduced in open court by live witness).

We conclude that the trial court did not err by not instructing the jury on the law of accomplices.

We overrule Castillo's fifth issue.

---

[5] Even assuming that Chris's recorded statement constituted testimony, any error in failing to give an accomplice instruction was harmless because his statements were corroborated by other witness testimony. *See* Tex. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) (requiring corroboration of accomplice testimony).

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).