**Opinion issued July 2, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00061-CR

———————————

**RUBEN ESCOBEDO JUAREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1268678**

---

## O P I N I O N

After being indicted for killing a woman with his hand, appellant Ruben Escobedo Juarez was convicted of criminally negligent homicide and sentenced to confinement for 35 years. *See* TEX. PENAL CODE ANN. § 19.05 (West 2011). On

appeal he argues that (1) the evidence was insufficient to support his conviction, (2) the trial court abused its discretion in determining his statement to the police was voluntary, (3) the jury had insufficient evidence to determine that his statement was given voluntarily, and (4) the trial court abused its discretion in denying his motion for mistrial.

We affirm.

## Background

Ruben Juarez met Roger Rowland and Linda Hartsough in the spring of 2010. A couple of weeks after they met, Juarez arranged to sleep on Rowland and Hartsough's couch in exchange for $20 a night in rent, with the understanding that it was a temporary arrangement because Juarez would be leaving for a job. During the few weeks Juarez stayed with them, the three smoked crack cocaine together.

One night around midnight, Juarez and Hartsough left the house together to go beg for money to buy beer. At a nearby gas station, Juarez raised some money and bought two beers. Juarez and Hartsough then went to buy some crack cocaine from a dealer who lived about a block away. Hartsough waited in some nearby woods while Juarez bought the drugs. After smoking the crack, Juarez and Hartsough had sex in the woods. While they were having sex, Juarez placed his hand on her neck for about three minutes. She began to convulse and foam at the

2

mouth. Juarez stood up and found that she did not have a pulse. Juarez then went back to the house where Rowland was waiting.

When he returned to the house, Juarez told Rowland that he had sent Hartsough back with the beer while he bought the crack. After smoking crack with Juarez, Rowland started to worry about Hartsough and took a walk looking for her. The next day, Juarez left town for the job he had scheduled. Rowland continued to search for Hartsough and reported her disappearance to the police.

Six weeks later, a man entered the woods and saw human bones on the ground. The bones were later identified as belonging to Hartsough. After asking some bystanders about the bones, a police detective discovered that Rowland had reported that Hartsough was missing. Detective Eli Cisneros contacted Rowland and learned that Juarez had been with Hartsough on the night of her disappearance.

The police arrested Juarez based on an open warrant for a parole violation and brought him in for questioning. After Juarez was brought to an interview room, Detective Cisneros introduced himself and informed Juarez that he was investigating the skeletal remains. Cisneros turned on recording equipment in the room and informed Ruben of his constitutional and statutory rights against self-incrimination. Juarez then told the story of how he had gone to the store with Hartsough, had sex with her, put his hand on her throat, and she had died.

3

The next day, the police contacted the medical examiner's office to report that Juarez had said he had his hand on Hartsough's neck before she died. Based on this information and the findings of the forensic anthropologist who examined her bones, the assistant medical examiner determined that the cause of Hartsough's death was "homicidal violence." The forensic anthropologist had found that a small bone in Hartsough's neck, her hyoid bone, had a small fracture in it. A fracture in the hyoid bone can be a result of strangulation, but the anthropologist could not determine with certainty whether this occurred before or after Hartsough's death.

The State indicted Juarez. Before trial Juarez moved to suppress his recorded statement, arguing that he had not knowingly, intelligently, and voluntarily waived his rights. During the suppression hearing, Detective Cisneros testified that he offered Juarez food, water, and restroom breaks. He did not promise anything in exchange for the statement, although the detective did say that he would "help him get through this," which he testified meant to help Juarez get through the interview process. Juarez never asked for a lawyer or to terminate the interview. After listening to Detective Cisneros's testimony and the recording several times, the trial court denied the motion, determining that Juarez had said "yes" in response to the detective's question of whether he waived his rights against self-incrimination.

4

Later, during jury selection, the prosecutor referenced two levels of scrutiny when the voluntariness of a statement is challenged:

STATE: He doesn't waive his rights, we can't talk to him, okay? If somebody comes in, they're read their rights, they knowingly, voluntarily waive their rights and a statement is obtained, if we get to the point where we go to trial, there are two levels of scrutiny that a statement's going to go through, okay? The first level is the judge is going to look at it and she's going to have a hearing outside the presence of the jury –

DEFENSE COUNSEL: Judge, this is outside the presence of the jury itself and we object to it.

TRIAL COURT: Sustained.

STATE: She's going to have a hearing then after that hearing, if a statement gets to come in, she'll make a ruling, the jury then gets to see it-

DEFENSE COUNSEL: Judge, I object. This is way outside the presence of the jury's understanding.

TRIAL COURT: Sustained. Sustained.

DEFENSE COUNSEL: And I ask for a jury instruction.

TRIAL COURT: To disregard?

DEFENSE COUNSEL: Yes.

TRIAL COURT: All right. The jury will disregard. Please move on counsel.

DEFENSE COUNSEL: Move for a mistrial.

THE COURT: Denied.

During the trial, the State played the video recording of Juarez's statement before the jury. The jury charge included an instruction to disregard the recorded statement unless the jury found "from the evidence beyond a reasonable doubt that prior to and during such oral statement, if any, the defendant knowingly, intelligently, and voluntarily waived" his right against self-incrimination.

The jury convicted Juarez of criminally negligent homicide, and the trial court assessed punishment at 35 years in prison. On appeal, Juarez challenges the sufficiency of the evidence supporting his conviction, the admission of his statement, and the denial of his motion for mistrial.

<strong>Analysis</strong>

## I. Sufficiency of the evidence

In two issues, Juarez challenges the sufficiency of the evidence supporting his conviction for criminally negligent homicide, emphasizing that the forensic evidence was not conclusive that Hartsough's hyoid bone had been fractured around the time of her death. Juarez also contends that the jury could not have determined beyond a reasonable doubt that he had voluntarily waived his right to remain silent in the face of police questioning.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and we may not substitute our judgment for that of the jury. *Id.* We review to ensure that the evidence presented supports the jury's verdict and that the State presented a legally sufficient case of the offense charged. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Our sufficiency review requires consideration of "all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). The rationale for this rule has been explained by the Court of Criminal Appeals as follows:

> In the event a portion of this evidence was erroneously admitted, the accused may complain on appeal of such error. If his complaint has merit and the error is reversible [*see* TEX. R. APP. P. 44.2], a new trial should be ordered. But jurors do not act irrationally taking such evidence into account, since they are bound to receive the law from the trial judge. All evidence which the trial judge has ruled admissible may therefore be weighed and considered by the jury, and a reviewing court is obliged to assess the jury's factual findings from this perspective.

7

*Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988); *see also Moff v. State*, 131 S.W.3d 485, 488-90 (Tex. Crim. App. 2004). The Court has also endorsed a further explanation by Professors Dix and Dawson:

> This rule rests in large part upon what is perceived as the unfairness of barring further prosecution where the State has not had a fair opportunity to prove guilt. A trial judge's commission of trial error may lull the State into a false sense of security that may cause it to limit its presentation of evidence. Erroneous admission of hearsay evidence, for example, may cause the State to forego offering other evidence that would ultimately prove admissible.

*Moff*, 131 S.W.3d at 490 (quoting 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.531, at 742 (2d ed. 2001)). Nevertheless, this rule does not mean that "all evidence, admissible and inadmissible, has *probative* value and is capable of supporting a judgment." *Gardner v. State*, 699 S.W.2d 831, 835 (Tex. Crim. App. 1985).

A legally sufficient showing of criminally negligent homicide requires the State to prove that (1) the defendant's conduct caused the death of an individual; (2) the defendant ought to have been aware that there was a substantial and unjustified risk of death from his conduct; and (3) the defendant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery*, 369 S.W.3d at 192–93. Criminal negligence does not require proof that the defendant was subjectively aware of the risk of harm, only that the defendant was aware of the

8

attendant circumstances leading to such a risk. *Id.* at 193. "[T]he key to criminal negligence is found in the failure of the actor to perceive the risk." *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

"Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence." *Montgomery*, 369 S.W.3d at 193. The seriousness of the negligence must be such that any reasonable person sharing the community's sense of right and wrong would know it. *Id.* The risk must be "of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people." *Williams v. State*, 235 S.W.3d 742, 750–51 (Tex. Crim. App. 2007). So, conduct such as an abrupt lane change in front of another vehicle on a highway that results in the death of another person, or towing dirt in a homemade trailer with obvious defects in the hitch that came loose and killed a pedestrian, are sufficiently blameworthy acts as to constitute criminal negligence. *See Montgomery*, 369 S.W.3d at 193 (lane change); *Tello v. State*, 180 S.W.3d 150, 157–58 (Tex. Crim. App. 2005) (faulty trailer hitch). "In finding a defendant criminally negligent, a jury is determining that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment." *Montgomery*, 369 S.W.3d at 193.

The State presented evidence to support all of the elements of criminally negligent homicide. After smoking crack cocaine, Juarez put his hand on

9

Hartsough's neck for "about three minutes" while having sex with her. Although he denied killing her, Juarez stated that the sex "just got a little bit out of hand" and "just got a little crazy." He stated that she "went into convulsions" and "started foaming from the mouth," and after Juarez failed to find a pulse, he ran off with the two beers he had bought. After returning to the house, he did not tell Rowland what had happened, and he failed to call for medical assistance for Hartsough.

The forensic evidence and testimony concerning the bones corroborated the evidence from Juarez's statement—the jury did not have to rely upon it alone in finding that Juarez had been criminally negligent. The assistant medical examiner testified that it is common for someone who is being strangled to convulse and experience seizure activity, including appearing to foam at the mouth. A fracture in the hyoid bone corroborated the theory that a strangulation occurred. The hyoid bone did not bear any of the indicia of having been broken after Hartsough's death, such as scavenger or scraping marks, although the anthropologist who examined the bones could not rule out such a possibility. Because there were no signs of healing, however, the bone was certainly fractured shortly before or after death.

Taken together, Juarez's statement, the fact of Hartsough's death, and the evidence concerning her skeletal remains are sufficient evidence that Juarez caused Hartsough's death by putting his hand on her neck, which he ought to have known created a substantial and unjustified risk. It is common knowledge that people can

10

die by strangulation, even inadvertently. The jury reasonably could have found that Juarez's failure to appreciate that substantial and unjustified risk, given the circumstances of which he knew at that time, was a gross deviation from a standard of care that an ordinary person would exercise under the same circumstances. *See id.* at 194–95. He was alone in the woods with Hartsough in the middle of the night after they had taken drugs together, and he pressed on her throat or neck for approximately three minutes while having sex with her. After she began to convulse, he checked her pulse and thought she was dead, but he then left her alone, lying about what he knew to Rowland and failing to seek any medical assistance for her. The question of whether Juarez's conduct was a gross deviation is a question for the factfinder, and a rational jury could have concluded it was. *See id.* at 195. The jury was not required to rely only on direct or forensic evidence; it could base its conclusion on "the combined and cumulative force of all the incriminating circumstances." *Temple*, 390 S.W.3d at 359–60 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). Therefore, we overrule Juarez's issue regarding the sufficiency of the evidence supporting the elements of criminally negligent homicide.

Juarez asks us to separately analyze the sufficiency of the evidence without considering his recorded statement which was presented as evidence at trial, on the theory that the jury could not have rationally concluded beyond a reasonable doubt

11

that the statement was voluntary, and as such they were obliged to disregard it. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West Supp. 2005). This argument misconstrues the method of sufficiency review. Our task is to determine whether there is evidence upon which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See, e.g.*, *Montgomery*, 369 S.W.3d at 192. The voluntariness of a statement given by the defendant is not an element of any criminal offense. Even if inadmissible, we consider any such statement as part of our sufficiency review if it was part of the evidence at trial. *See Winfrey*, 393 S.W.3d at 767; *Dewberry*, 4 S.W.3d at 740. And Juarez's recorded statement—that he had sex with Hartsough after both of them used crack cocaine, that during their intercourse he held his hand on her neck for about three minutes, that she began to convulse and foam at the mouth, and he then abandoned her in the woods—certainly had probative value capable of supporting the jury's determination on elements of criminally negligent homicide.

"An appellant . . . is not entitled to have an appellate court first consider the appellant's complaints concerning improper admitted evidence and, if it resolves any of those in favor of the appellant, to then, second, consider the sufficiency of the properly-admitted evidence to support the conviction." 43A DIX & DAWSON, *supra*, § 43.531, at 742 (quoted with approval in *Moff*, 131 S.W.3d at 490). The remedy for the improper admission at trial of a defendant's statement does not

12

come through a review of the sufficiency of the evidence, but instead through an analysis of whether the resulting harm, if any, merits reversal. *See Thomas*, 753 S.W.2d at 695; TEX. R. APP. P. 44.2. Accordingly, we overrule Juarez's challenges to the sufficiency of the evidence supporting his conviction.

## II. Admission of recorded statement

Juarez argues that the trial court abused its discretion in admitting his recorded statement because it was not freely and voluntarily given. The determination of whether a statement is voluntary is a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). We give almost complete deference to the trial court's determination of historical facts that depend on credibility, while we conduct a de novo review of the trial court's application of law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When a defendant presents evidence raising a voluntariness question, the prosecution must controvert the evidence and prove voluntariness by a preponderance of the evidence. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex. Crim. App. 1999). The trial court assesses the credibility of the witnesses and the weight to be accorded to their testimony. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex. Crim. App. 1993). We must sustain the trial court's ruling if it is reasonably supported by the record evidence and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

A defendant's statement may be used in evidence against him if the defendant made it freely and voluntarily, without compulsion or persuasion. TEX. CODE CRIM. PROC. ANN. art. 38.21. For the statement to be admissible, he must knowingly, intelligently, and voluntarily waive his right to remain silent, to have an attorney present, to have an attorney appointed if indigent, and to terminate a police interview. *Id.* art. 38.22, § 3(a)(2); *Joseph v. State*, 309 S.W.3d 20, 23–24 (Tex. Crim. App. 2010). A statement that is "involuntary" as a matter of constitutional law is also "involuntary" under article 38.22 of the Code of Criminal Procedure, although the converse is not necessarily true. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). We evaluate whether there has been a valid waiver under the totality of the circumstances surrounding its acquisition, including the defendant's experience, background, and conduct. *See Joseph*, 309 S.W.3d at 25 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140–41 (1986)); *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). A waiver is voluntary if it is the product of a free and deliberative choice, rather than intimidation, coercion, or deception. *See Joseph*, 309 S.W.3d at 25.

The State bears the burden of proving a valid waiver by a preponderance of the evidence. *Id.* at 24 (citing *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515 (1986)). There is no requirement that a defendant explicitly waive his rights; neither an express oral or written waiver is required. *Id.* (quoting *Watson v. State*,

14

762 S.W.2d 591, 601 (Tex. Crim. App. 1988)).  An implicit waiver can be inferred from the actions and words of the person being interrogated.  *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979)).

When a question is raised about the voluntariness of the statement, the Code of Criminal Procedure requires that the trial court hold a hearing outside the presence of the jury and enter an order with a conclusion as to whether the statement was made voluntarily.  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6.  Once the trial court determines that the statement was voluntary, the statement may be submitted to the jury with an instruction for the jury not to consider the statement for any purpose unless they believe beyond a reasonable doubt that the statement was made voluntarily. *Id.*

Juarez does not dispute that he was informed of his rights, only that he did not give his waiver voluntarily.  He notes that the recording offered as evidence of his answer to the detective's question of whether he waived his rights is "so nearly inaudible as to itself raise a reasonable doubt about whether he was giving a waiver knowingly and voluntarily, without compulsion [or] persuasion."  Additionally, he suggests when the detective said he would help Juarez "through this," the detective improperly persuaded him to waive his rights.

The totality of circumstances surrounding the interrogation, however, supports the trial court's determination that Juarez made a free and deliberate

15

choice to waive his rights. Juarez was lawfully arrested pursuant to a warrant and transported to the police station. The video recording of the interview shows that Detective Cisneros advised Juarez of his rights. Cisneros testified that Juarez was not promised anything in exchange for his statement, not deprived of any necessity such as food, water, or a restroom break, and was not threatened. Juarez never asked for an attorney or to terminate the interview. He did not say that he was under the influence of drugs or alcohol, and Cisneros testified that he appeared sober. Cisneros also testified that he heard Juarez say "yes" to the question of whether he waived his rights. Our standard of review requires nearly total deference to factual determinations that depend on credibility, such as the truth of Cisneros's testimony. *See Garcia*, 15 S.W.3d at 535.

The recording does not reflect that Juarez was offered anything in exchange for his statement except for the ability to tell his "side of it." When Cisneros first asked if Juarez wanted to waive his rights, he answered initially, "That means I'm being convicted of it." Cisneros immediately answered, "No, it does not, it does not. No, what it means is in order for me to take your statement, to hear what you have to say, I cannot even talk to you unless you waive these rights." In reply, Juarez did not remain silent or refuse to waive his rights; instead, as Cisneros testified and the trial court found after reviewing the recording, he answered: "yes." After a single further question about what happened during the night of

16

Hartsough's disappearance, Juarez began to explain what happened. This exchange does not show that Cisneros resorted to "physical or psychological pressure to elicit [the] statements," *Joseph*, 309 S.W.3d at 26, but he merely repeated his question of whether Juarez would waive his rights. Under these circumstances, we conclude that the trial court did not err in determining that Juarez made a voluntary waiver.

## III. Motion for mistrial

Finally, Juarez contends that the trial court abused its discretion when it denied his motion for mistrial. When a trial court denies a defendant's motion for mistrial after sustaining an objection and instructing the jury to disregard, the dispositive issue is the denial of a mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). We review the trial court's refusal to grant a mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Bokemeyer v. State*, 355 S.W.3d 199, 202 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We view the evidence in the light most favorable to the trial court's ruling, upholding the ruling if it was within the zone of reasonable disagreement. *Bokemeyer*, 355 S.W.3d at 202 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). Only in extreme circumstances, when the prejudice is incurable, will a mistrial be required. *Hawkins*, 135 S.W.3d at 77. "[O]rdinarily, a prompt instruction to disregard will cure error associated with an improper

question and answer." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *see also Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005).

Although we do not conduct the usual harm analysis in deciding whether the trial court abused its discretion, "whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (quoting *Hawkins*, 135 S.W.3d at 77). In determining whether a trial court abused its discretion in denying a mistrial, we apply the three-part *Mosley* test. *See Ramon v. State*, 159 S.W.3d 928, 929 (Tex. Crim. App. 2004) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). We balance: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id.*

A trial court's order that a defendant's statement is voluntary and admissible "shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. At trial, the State did not tell the jury during voir dire what the trial court had determined, but it did begin to explain the process of determining the voluntariness of Juarez's statement:

> STATE: . . . if we get to the points where we go to trial, there are two levels of scrutiny that a statement's going to go through, okay? The

18

> first level is the judge is going to look at it and she's going to have a hearing outside the presence of the jury—
>
> DEFENSE COUNSEL: Judge, this is outside the presence of the jury itself and we object to it.
>
> TRIAL COURT: Sustained.
>
> STATE: She's going to have a hearing then after that hearing, if a statement gets to come in, she'll make a ruling, the jury then gets to see it—

A reasonable interpretation of the prosecutor's remarks is that they do not explicitly reference the trial court's determination that Juarez's statement was admissible, but the remarks do imply to the jury that if they "see" the statement, it is because the trial court ruled that it was permitted. After the prosecutor made these remarks, Juarez's counsel again objected, and the trial court sustained the objection. At his counsel's request, the trial court instructed the jury to disregard the prosecutor's remark. Counsel then moved for a mistrial, which the trial court denied.

In *Johnson v. State*, 510 S.W.2d 944 (Tex. Crim. App. 1974), the Court of Criminal Appeals held that a similar comment made to the jury in violation of article 38.22 was not harmful error. In that case, the prosecutor remarked: "if there is anything wrong at all with the confession, Judge Power wouldn't have let it into evidence." *Id.* at 947. The defense counsel objected to the remark. *Id.* While explaining that it would not "condone such argument," the *Johnson* Court held the

remark was not reversible error, noting that the confession was admitted into evidence in the jury's presence and the remark did not refer to any specific finding regarding voluntariness. *Id.*; *see also Carter v. State*, 650 S.W.2d 843, 848 (Tex. App.—Houston [14th Dist.] 1982), *aff'd*, 650 S.W.2d 793 (Tex. Crim. App. 1983).

Referring to *Johnson*, the Court of Criminal Appeals in *DeRusse v. State*, 579 S.W.2d 224, 231 (Tex. Crim. App. 1979), likewise determined that an improper reference violating article 38.22 was not harmful error. In *DeRusse*, the prosecutor said before the jury that a confession had "already been ruled to be voluntary and that [the defendant] knowingly and intelligently waived his rights." *Id.* at 230. The *DeRusse* Court noted that the prosecutor in that case had referenced specific findings regarding the confession, but did not make the statement during jury argument, when the jury may be expected to be "particularly attentive," but during an objection to testimony. *Id.* at 231. As the trial court had given a prompt instruction to disregard and instructed them that it would be their duty to pass upon the voluntariness of the statement, the prosecutor's error was held to not require reversal. *Id.*

Analyzing under the *Mosley* factors and with the aforementioned authorities in mind, we cannot say that the prosecutor's comment on the article 38.22 process was the kind of "extreme" and "prejudicial" circumstance meriting reversal. *See*

20

*Hawkins*, 135 S.W.3d at 77, 82 (concluding that even statements violating a mandatory statute must be analyzed for harmless error).

The first factor, regarding the severity of the prosecutor's misconduct, does not weigh in favor of reversal. While the prosecutor did obliquely refer to the trial court's pretrial hearing on the voluntariness of the statement, the prosecutor referred to the process in general, and not to the trial court's order, specific findings, or even that a hearing had yet occurred in this case. The statement was later admitted into evidence by the court in the jury's presence. *See Johnson*, 510 S.W.2d at 947 (considering this as a factor disfavoring reversal). Additionally, the prosecutor's remark was made during voir dire when hypothetical scenarios are discussed, not during jury argument when the jurors are expected to be particularly attentive. *See DeRusse*, 579 S.W.2d at 131.

The second factor, regarding the curative measures adopted by the trial court, also does not weigh in favor of reversal. The trial court immediately gave an instruction to disregard the improper comment. This should have cured the error. *See Simpson*, 119 S.W.3d at 272; *Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000) ("Even when the prosecutor mentions facts outside the record during argument, an instruction to disregard will generally cure the error."). Further insulating the jury from the improper inference that the trial court had already deemed the statement voluntary, the jury was properly instructed in the

jury charge that they were to not consider the statement for any purpose unless they themselves found beyond a reasonable doubt that the statement was voluntarily made.

The third factor, regarding the certainty of conviction, does not weigh in favor of reversal. Although Juarez's statement itself was integral to his conviction, the prosecutor's remark did not introduce new evidence into the trial, let alone the sort of indelible, prejudicial evidence that normally warrants granting a mistrial. *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (improper statement must be "of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors"). The jurors themselves could also make their own determination of whether the statement was made voluntarily based on the video recording introduced into evidence. They were instructed that they were to make a voluntariness determination, and they were never told to defer to the trial court in this regard. Thus, it is unlikely that the jury's determination was unduly swayed by the prosecutor's remark during voir dire.

The prosecutor's statement regarding the article 38.22 process was improper, but the trial court's instruction to disregard was adequate to cure that error. Concluding the trial court did not abuse its discretion in denying Juarez's motion for mistrial, we overrule his final issue.

22

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack, and Justices Sharp and Massengale.

Justice Sharp concurs in the judgment only.

Publish.   TEX. R. APP. P. 47.2(b).