**Opinion issued July 3, 2014.**



**In The**

# Court of Appeals

**For The**

## First District of Texas

_____

**NO. 01-13-00211-CR**
_____

**EDWARD CONTRERAS TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCR-059397**

---

**MEMORANDUM OPINION**

A jury convicted Edward Contreras Torres of continuous sexual abuse of a

child under 14 years of age[1] and assessed punishment at confinement for life. In

---

[1]     TEX. PENAL CODE ANN. § 21.02 (West Supp. 2013) (defining continuous sexual
        abuse of young child as two or more instances of sexual abuse committed against
        child under 14 years of age, occurring over period of 30 or more days).

his sole issue, Torres contends that the trial court erred in denying his motion to suppress his statement because it was involuntarily given. We affirm.

## Background

In the fall of 2011, Torres's daughter, "Jane Smith," then 16 years old, told her school counselor that her father had been sexually abusing her for years. According to the school counselor, Smith exhibited a calm demeanor, but, emotionally, "she was upset and troubled and really needed to . . . talk about some things." After hearing Smith's report of abuse, the counselor contacted CPS to report Smith's allegations, and CPS came to school to talk to Smith. CPS interviewed Smith at school and then transported her to the Children's Advocacy Center for a forensic interview regarding the abuse.

During the forensic interview, Smith reported that her father had sexually abused her and that the abuse had occurred at her family's home. Smith later testified that Torres began inappropriately touching her when she was three years old and that touching turned into sex when she was 10 or 11 years old. According to Smith, the sexual abuse continued, often on a weekly basis, until she was 17 years old.

Based on the information Smith provided during her interview, Fort Bend County Sherriff Detective M. Cox contacted Smith's mother and asked her whether Torres, the father, would be willing to come to the police station to give a

2

voluntary statement. According to Cox, Torres agreed and arrived at the station "on his own."

Detective Cox testified about the interview. She stated that Torres never asked to speak to an attorney or to stop the interview, that she did not coerce or threaten him at any time, and that she did not promise him anything in exchange for his statement. Torres did not confess to sexually abusing Smith. Cox asked Torres to go to a second interview with Fort Bend County Sherriff Captain S. Colunga. Torres agreed.

Before the interview with Captain Colunga, Torres willingly took a polygraph examination, during which he denied that he had sexually assaulted his daughter. The police determined that Torres failed the polygraph. Torres again agreed to be interviewed by Colunga. At the beginning of Colunga's videotaped interview with Torres, Colunga told Torres that he was free to leave at any time and that he was not in custody. Colunga offered Torres food and water and gave him an opportunity to use the restroom. And Colunga testified that he did not directly or indirectly promise Torres anything in exchange for his statement. Torres concedes that he was not in custody during his interview.

During the interview, Captain Colunga had a lengthy discussion with Torres about his failed polygraph examination. Colunga asked Torres whether he had ever had sexual intercourse with his daughter or sexually assaulted his daughter. Torres

3

denied ever having any sexual relationship with his daughter. In response, Colunga explained to Torres that he would be willing to assist Torres in explaining what had happened between him and his daughter but that he could only do so if given true information from Torres: "In order for me to stand by you, okay, you have to be 100 percent truthful with me . . . [and] if you want me to sit here and you want me to stand with you and you want me to speak for you, you have to confide in me first. You have to tell me what I already know."

After a lengthy exchange about the importance of Torres's honest responses, Colunga reminded him that "I will stand with you. I will stand next to you and I will explain this. I will talk for you . . . but you have to be truthful with me." Colunga then reminded Torres that he could tell Colunga to stop talking at any time. After suggesting to Torres that he had to "trust somebody in your life," Colunga told Torres that "I'm not gonna leave you alone, bro. If I think you're worth spending my time here with you, then you should feel the same way about yourself." Then Colunga said, "I promise you one thing, okay? And this is a promise: if you and I talk right now, I'll clear this mess up for you. I will. And I'll stand by you there and tell them. I will. But you have to talk to me, alright? I know it's hard but tomorrow will be a better day for you, I promise." After this exchange, Torres admitted to having sexual intercourse with his daughter "maybe once."

After Torres admitted to having sexual intercourse with his daughter "maybe once," Colunga implored Torres to tell the whole truth. Colunga reiterated his earlier pleas for Torres to be truthful, saying, "I'm helping you clear this matter up. I'm going to help you, okay? We cleared this matter up. I'm asking how many times did you have sex with your daughter?" Colunga then said, "If I'm gonna stand there and tell the [district attorney] you're 100 percent truthful with me and you can be trusted, then you're gonna have to be 100 percent truthful with me, okay?" Torres later admitted that he had sex with his daughter "maybe five times."

At a pretrial hearing, Torres moved to suppress his videotaped confession, arguing that it was induced by Captain Colunga's promises that "I'll clear this mess up for you" and "tomorrow will be a better day for you, I promise." After hearing the evidence, the trial court made the following findings of fact: Torres was not in custody during his interview with Colunga; he appeared to be fully coherent and not under the influence of any substance; he had education and life experiences that rendered him capable of exercising his free will; and his statements were freely and voluntarily made without compulsion. The court concluded as a matter of law that there was no coercive police conduct and that Torres's statement was the product of a free and unconstrained choice. Having found that Colunga made no positive promises to Torres, the trial court denied the motion to suppress.

The jury found Torres guilty of continuous sexual abuse of a child under 14 years of age and assessed punishment at life confinement.

Torres timely appealed the trial court's denial of his motion to suppress his confession.

## Motion to Suppress

In his sole issue, Torres contends that his confession to Captain Colunga was involuntary because it "resulted from promises which were positive in nature, made by . . . a person in authority, which were of such an influential nature that caused the appellant to confess." He contends, therefore, that the trial court erred in admitting his confession and doing so had a "substantial and injurious effect upon the jury."

### A.     Standard of review

When a defendant challenges a trial court's denial of a motion to suppress a statement, we review the trial court's ruling for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We grant almost total deference to a trial court's determinations of historical facts. *Id*. We use the same deferential standard for mixed questions of law and fact that require evaluation of credibility and demeanor. *Id*. However, we review de novo all other mixed questions of law and fact that do not fall within that category. *Id*. When we have a videotape of the statement and an uncontroverted version of the facts, we review

the trial court's ruling on an application of law to facts de novo. *Herrera v. State*, 194 S.W.3d 656, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Article 38.21 of the Texas Code of Criminal Procedure provides that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed [in article 38.22]." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). When the circumstances under which the statement was given fail to meet this standard, the State may not use the statement during the prosecution of its case. *Ervin v. State*, 333 S.W.3d 187, 204 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003).

Whether a statement is voluntary presents a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000); *see Juarez v. State*, 409 S.W.3d 156, 164 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). When reviewing whether a statement is voluntary, we examine "the totality of the circumstances surrounding its acquisition," including the defendant's experience, background, and conduct. *Penry v. Sate*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995); *Juarez*, 409 S.W.3d at 165. A statement is involuntary if it was the production of intimidation, coercion, or deception. *Joseph v. State*, 309 S.W.3d 20, 26 (Tex. Crim. App. 2010); *Juarez*, 409 S.W.3d at 165.

**B.      Voluntariness of statement**

Section six of article 38.22 of the Code of Criminal Procedure requires the trial court to hold a hearing outside the jury's presence to determine whether a defendant voluntarily made his statement. TEX. CODE CRIM. PROC. ANN. art 38.22 § 6 (West Supp. 2013). After holding an article 38.22 hearing, the trial court found that Torres had voluntarily given his statement. And, as required by that section, the trial court instructed the jury that it should not consider the statement for any purpose unless it also believed beyond a reasonable doubt that Torres voluntarily made that statement. *Id*.

It is undisputed that Torres was not in custody when he gave his statement to Officer Colunga. However, Torres contends that his statement was induced by Colunga's positive promise to him.

When determining whether a confession was improperly induced by a promise, we consider whether (1) the confession was induced by the promise of some benefit to the defendant; (2) the promise was positive; (3) the promise was sanctioned by a person in authority; and (4) the promise is of "such character as would likely influence the defendant to speak untruthfully." *Hill v. State*, 902 S.W.2d 57, 59 (Tex. App.—Houston [1st Dist.] 1995, writ ref'd); *see Martinez v. State*, 127 S.W.3d 792, 795 (Tex. Crim. App. 2004) ("Under state law the determination is whether the officially sanctioned positive promise 'would be

likely to influence the defendant to speak untruthfully' and not whether, the defendant in fact spoke untruthfully." (citation omitted)). A positive promise need not be unequivocal, but it must "carry the suggestion of a *quid pro quo*." *Hill*, 902 S.W.2d at 59; *Chambers v. State*, 866 S.W.2d 9, 20–21 (Tex. Crim. App. 1993) (characterizing positive promise as one that "denote[s] the 'if—then' relationship" whereby police "induce appellant to confess by implicitly or explicitly suggesting a 'deal, bargain, agreement, exchange, or contingency'" (citation omitted)).

Unspecific offers to help the accused are unlikely to induce a suspect to make untruthful statements and will not invalidate a confession. *Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983); *Coleman v. State*, No. 14-12-00553-CR, 2013 WL 5758084 (Tex. App.—Houston [14th Dist.] Oct. 24, 2013, no pet.). Similarly, general statements that indicate a confession could result in leniency do not render a confession involuntary. *Muniz v. State*, 851 S.W.2d 238, 253–54 (Tex. Crim. App. 1993); *see, e.g.*, *Herrera,* 194 S.W.3d at 660 (holding no promise when police said "[w]e can talk to the D.A., get you an offer, if you can help us"); *Espinosa v. State*, 899 S.W.2d 359, 364 (Tex. App.—Houston [14th Dist.] 1995,writ ref'd) (holding promise of "'less time' may have contributed to appellant's decision to make a statement, but we cannot say that the inducement *probably* caused him to *falsely* confess"). Furthermore, predictions about possible future events do not constitute a positive promise. *Mason v. State*, 116 S.W.3d 248,

261 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *see Martinez v. State*, 127 S.W.3d 792, 793 (Tex. Crim. App. 2004) (holding police statement from which defendant "'could have gathered' that his father and brother would not be charged if appellant 'accepted responsibility'" was not promise); *see also Jacobs v. State*, 787 S.W.2d 397, 400 (Tex. Crim. App. 1990) (holding promise to allow suspect to see his girlfriend if he confessed did not render confession involuntary).

Torres relies upon *Chambers v. State* to support his contention that "Colunga induced [him] to confess by explicitly suggesting that if the appellant would talk with him right now, then Colunga would 'clear up this mess,' and that 'tomorrow will be a better day for you, I promise that.'" *See Chambers*, 866 S.W.2d at 20–21. In *Chambers*, the Court of Criminal Appeals considered whether the defendant's confession was involuntary because it was alleged to have been "induced by the promise that if he confessed 'everything would be all right.'" *Chambers*, 866 S.W.2d at 20. The Court held that a "cliché" like "everything is going to be all right" cannot be construed as a promise, and therefore the defendant's statement was voluntary. *Id*.

At the beginning of Captain Colunga's interview with Torres, Colunga told Torres that the polygraph examination showed that he had not answered truthfully when he denied that he had ever sexually assaulted his daughter. Colunga asked Torres again whether he had sexually assaulted his daughter and assured Torres

10

that "I am willing to spend the extra time with you here to clear this matter; there's always a reason why." Captain Colunga also told Torres that "I'm willing to do this for you . . . I will stand with you. I will stand next to you and I will explain this. I will talk for you . . . but you have to be truthful with me." After making several appeals for Torres to tell the truth, Colunga said, "I promise you one thing, okay? And this is a promise: if you and I talk right now, I'll clear this mess up for you. I will. And I'll stand by you there and tell them. I will. But you have to talk to me, alright? I know it's hard but tomorrow will be a better day for you, I promise." Torres later confessed to having sexually abused Smith about five times.

Captain Colunga's promises that "tomorrow will be a better day for you," and "I'll clear this mess up for you," did not implicitly or explicitly suggest "a 'deal, bargain, agreement, exchange, or contingency.'" *Chambers*, 866 S.W.2d at 20–21. Colunga's general statements do not constitute the "if-then" relationship required to establish a positive promise that would likely influence a defendant to speak untruthfully. *Id.* at 22; *see Martinez*, 127 S.W.3d at 795.

Colunga's statements also did not promise leniency, guarantee future events as a result of his confession, or promise a specific outcome. *See Muniz*, 851 S.W.2d at 253–54 (holding general statements that could result in leniency does not render confession involuntary); *see Mason*, 116 S.W.3d at 261 (holding predictions about future not positive promise); *see Jacobs*, 787 S.W.2d at 400

(holding promise to see girlfriend did not induce involuntary confession). Accordingly, Colunga's statements were not unequivocal conditional promises that would have been likely to influence Torres to speak untruthfully.

We conclude, therefore, that the trial court did not err in determining that Torres's statement was voluntary or abuse its discretion in denying Torres's motion to suppress his statement.

We overrule Torres's sole issue.

## Conclusion

We affirm.


Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).