**Opinion issued March 14, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00658-CR

———————————

### BILLY DEWAYNE DENISON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 15CR2533**

---

## MEMORANDUM OPINION

After the trial court denied his pretrial motion to suppress, appellant pleaded guilty to intoxication manslaughter. The trial court found two enhancement allegations true and assessed punishment at 50 years' confinement. In two issues on

appeal, appellant contends that the trial court erred by denying his motion to suppress because (1) the State did not show that he understood his *Miranda*[1] rights before waiving them and (2) portions of his recorded statement were inaudible in violation of Texas Code of Criminal Procedure article 38.22 section 3(a)(3).[2] In a third issue, appellant contends that the trial court violated his Sixth Amendment right to counsel and Fifth and Fourteenth Amendment rights to due process by making him stand trial wearing handcuffs. We affirm.

## BACKGROUND

After a night spent drinking at a hotel with his friend, appellant took his friend's car and left the hotel. While traveling on the Galveston causeway, appellant collided with a motorcycle, killing its driver. Appellant told a paramedic at the scene that he was traveling 100 miles per hour. Appellant was transported to a nearby hospital where his blood alcohol content was determined to be 0.17%. His blood was later drawn again pursuant to a search warrant and it was 0.137%. Appellant indicated that he wanted to give a statement, so, after he was released from the hospital, he was taken to the police station.

Sergeant R. Sanderson, of the Galveston Police Department, conducted an interview of appellant at the police station. Before the interview, Sanderson

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *See* TEX. CODE CRIM. PROC. art. 38.22, § 3(a)(3).

2

"prepared the video equipment so that it was ready to record." He turned on the equipment, verified that it was working, and began the recording before he ever entered the room.

Sergeant Sanderson read appellant his *Miranda* rights and appellant verbally indicated that he understood his rights by replying "yes" when asked. Sanderson also provided appellant with a written copy of his *Miranda* rights, which appellant did not immediately sign. Instead, appellant began asking questions about the accident and whether the driver of the motorcycle was ok. After a discussion about other matters, Sanderson asked appellant if he was going to sign the form to waive his rights, and appellant asked, "waive my rights for what?" The video then shows appellant moving his chair to read the waiver-of-rights document before signing it.

At several times during the interview, appellant appeared to doze off. Sergeant Sanderson could not tell if appellant was actually sleeping or just pretending to sleep. The sergeant noted that appellant appeared to doze off when being questioned about how much and what he drank but was otherwise able to answer the questions. Sergeant Sanderson asked appellant if he would like to continue the interview at another time, and appellant replied, "no," and continued answering questions.

Sergeant Sanderson testified that appellant did not appear to still be intoxicated at the time of the interview, which occurred almost five hours after the

3

accident. Sergeant Sanderson believed that appellant was capable of making an informed decision about his rights.

During portions of the videotape, appellant's responses are muffled. Sergeant Sanderson testified that the recording equipment was working properly, but appellant "was very soft-spoken." The microphone in the room "depends on the volume you speak at . . . in order for the mic[rophone] to pick [it] up."

## MOTION TO SUPPRESS

In his first and second issues, appellant contends the trial court erred in denying his motion to suppress because (1) the State did not show that he understood his *Miranda* rights before waiving them and (2) portions of his recorded statement were inaudible in violation of Texas Code of Criminal Procedure article 38.22 section 3(a)(3). We address each issue respectively.

### *Standard of Review*

When reviewing a trial court's decision on a motion to suppress regarding a custodial interrogation, we must conduct a bifurcated review. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We afford almost total deference to the trial court's rulings on questions of historical fact and credibility and review de novo only the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Id.* The evidence presented on a motion to suppress is viewed in the light most favorable to the trial court's ruling. *State v. Kelly*, 204

4

S.W.3d 808, 818 (Tex. Crim. App. 2006). We will affirm the trial court's ruling if it is correct under any theory of law applicable to the case and is reasonably supported by the record. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

***Voluntariness of Statement***

In issue one, appellant argues that the State did not prove that he knowingly, intelligently, and voluntarily waived his *Miranda* rights.

*Applicable Law*

A defendant may claim that his statement was not freely and voluntarily made and thus may not be used as evidence against him under several different theories: (1) the Due Process Clause (2) *Miranda v. Arizona*, as expanded in Texas Code of Criminal Procedure, Article 38.22, sections 2 and 37; or (3) Article 38.22, section 68—general voluntariness. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). "A statement that is involuntary as a matter of constitutional law is also involuntary under Article 38.22, but the converse need not be true." *Id.* (internal citations omitted).

"A confession may be involuntary under the Due Process Clause only when there is police overreaching." *Id.* Absent police misconduct causally related to the confession, "there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 170. The Due Process Clause does not protect people from themselves. *Id.* Similarly, *Miranda* "protects defendants

against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.* Due-process and *Miranda* claims involve an "objective assessment of police behavior." *Id.* at 171. A defendant's will may be overborne if the totality of the circumstances shows that there was official, coercive conduct of such a nature that a statement from the defendant was unlikely to have been the product of an essentially free and unconstrained choice. *See Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *see also Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). The Constitution leaves voluntariness claims based on a defendant's state of mind for resolution by state laws governing the admission of evidence. *Oursbourn*, 259 S.W.3d at 171.

In Texas, Code of Criminal Procedure article 38.21 provides that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ." TEX. CODE CRIM. PROC. art. 38.21; *Oursbourn*, 259 S.W.3d at 169; *Howard v. State*, 482 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Article 38.22 "establishes procedural safeguards for securing the privilege against self-incrimination." *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. art. 38.22.

Article 38.22 provides that an oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding

6

if certain procedural safeguards are met, including: (1) that an electronic recording is made; (2) before the statement, but during the recording, the accused is given the warnings required by Texas Code of Criminal Procedure article 38.22, section 2(a); and (3) the accused knowingly, intelligently, and voluntarily waives the rights conveyed by the warning. TEX. CODE CRIM. PROC. art. 38.22 § 3(a).

> Article 38.22, section 2(a), requires that the State inform the accused that:
>
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. art. 38.22 § 2(a); *Joseph*, 309 S.W.3d at 24; *Howard*, 482 S.W.3d at 255.

The State bears the burden to demonstrate by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* and his statutory rights. *Howard*, 482 S.W.3d at 255; *see also* TEX. CODE CRIM. PROC. art. 38.22. This burden does not arise, however, unless the defendant first offers evidence raising a voluntariness question. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex.

7

Crim. App. 1999); *Juarez v. State*, 409 S.W.3d 156, 164 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

To determine voluntariness, the court must examine the totality of the circumstances surrounding the acquisition of the statement. *Creager*, 952 S.W.2d at 856; *Howard*, 482 S.W.3d at 256 (noting that "all the circumstances surrounding the interrogation" include defendant's "experience, background, and conduct" (internal quotations omitted)). A waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Leza v. State*, 351 S.W.3d 344, 349–50 (Tex. Crim. App. 2011).

Next, "[i]t will suffice to render a waiver knowing and intelligent . . . that the accused has been made aware, and fully comprehends, that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him later in a court of law." *Id.* "Once it is determined that a suspect[ ] . . . at all times knew he could stand mute . . . , and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* (quoting *Moran v. Burbine*, 476 U.S. 412, 422–23 (1986)).

Furthermore, a defendant's waiver of rights may be implied upon a showing that the defendant (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Howard*, 482 S.W.3d at 256. "Simply making a statement is often the kind of conduct viewed as indicative of one's intention to waive [his] rights." *Id.* (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010)). "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* (quoting *Berghuis*, 560 U.S. at 388–89).

*Findings of Fact and Conclusions of Law*

The trial court made the following findings of fact, which are relevant to issue one:

The interview was conducted approximately five hours after the defendant was alleged to have been involved in a fatal crash where he was intoxicated[.]

Prior to the interview the defendant had been to the hospital and had been discharged[.]

The Defendant was Mirandized both orally and in writing[.]

The Defendant appeared to understand what Sergeant Sanderson was saying[.]

The Defendant appeared to read and understand his rights[.]

The Defendant did not appear intoxicated at the time of the recording[.]

9

The Defendant's intoxication at the time of the interview, conducted by Sergeant Sanderson and Officer Dodson, did not prevent him from making an informed and independent decision to waive his rights[.]

There was no evidence that the defendant was rendered incapable of understanding his rights[.]

The defendant was not deprived of his faculties due to his intoxication at the time of the custodial interview[.]

Prior to any questioning the defendant was read his Miranda rights, on video, and was presented with a written waiver of his rights which he signed[.]

After being read his rights, by Sergeant Sanderson, the defendant stated that he understood his rights[.]

The Defendant was capable of waiving his rights, and did so in an informed and independent manner[.]

The defendant then began to ask Sergeant Sanderson about the condition of the person who he crashed into[.]

Sergeant Sanderson made no impermissible promises or enticements to the defendant to coerce him in to waiving his rights[.]

While the defendant and Officer Sanderson were signing the waiver of rights, the defendant moved his chair to further review the waiver of rights—upon completion of this process the defendant readjusted his chair moving to a position where he could better speak with Sergeant Sanderson and Officer Dodson[.]

The trial court made the following conclusions of law, which are relevant to issue one:

The Defendant was properly Mirandized both in writing and on videotape[.]

10

The Defendant Statement to Sergeant Sanderson and Officer Dodson were made pursuant to the requirements of Article 38.22 of the Code of Criminal procedure[.]

The defendant was not promised anything, or coerced in any way to make his statement[.]

*Analysis*

Appellant argues that the State failed to prove that his statement was voluntary because he was in an automobile accident and taken to the hospital several hours before the questioning, he was intoxicated at the time of the accident, the videotape of the questioning shows that he was disoriented, and he appeared to fall asleep during questioning.

Regarding the accident, there is no evidence that appellant was injured in the accident. The fireman who treated appellant at the scene of the accident testified that appellant "didn't give any signs for me to say, okay, well, maybe I need to assess more as to his condition." And, although appellant was transported to the hospital, he was treated and released. There is no evidence in the record to support the assertion that, because of the accident, appellant was unable to understand and waive his *Miranda* rights.

Appellant also asserts lack of sleep is a relevant consideration when determining the voluntariness of a defendant's waiver and points to the fact that he appears to fall asleep several times during the interview. While lack of sleep is a circumstance to consider in determining whether a statement was made voluntarily,

*see Martinez v. State*, 513 S.W.3d 87, 93 (Tex. App.—Houston [14th Dist.] 2016, no pet.), such a factor alone will not render a defendant's confession involuntary. *Barney v. State*, 698 S.W.2d 114, 121 (Tex. Crim. App. 1985). Appellant did not complain of being tired or needing to rest. *See Hernandez v. State*, 421 S.W.3d 712, 718 (Tex. App.—Amarillo 2014, pet. ref'd) (concluding record did not indicate defendant's inculpatory statements were influenced by fatigue even though interrogation was defendant's third in 48 hours and began at 11:00 p.m. when defendant did not complain of tiredness); *see also Chambers v. State*, 866 S.W.2d 9, 20 (Tex. Crim. App. 1993) (lack of sleep through fault of defendant will not support finding of involuntariness). In fact, Sergeant Sanderson asked appellant if he would prefer to do the interview at a different time and appellant told him "no" and continued answering questions.

Appellant also relies on the fact that he was intoxicated at the time of the accident as support for his claim that his statement five hours later was involuntary. Intoxication is "but one relevant factor to consider in determining whether an accused understood his rights" before waiving them. *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (citing *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996)). Here, Sergeant Sanderson testified that he did not feel that appellant was deprived of his faculties due to any intoxication at the time of questioning, almost five hours after the accident. Based on this evidence, the trial

12

court was within its discretion in concluding that appellant understood his rights and the effect of waiving those rights. *See Ripkowski*, 61 S.W.3d at 384 (holding that, when law enforcement officials testified appellant appeared to comprehend warnings and questions, trial court did not abuse discretion in concluding appellant not intoxicated and waiver of *Miranda* rights not involuntary.)

The evidence supports the trial court's findings that "[t]here was no evidence that the defendant was rendered incapable of understanding his rights" and that he "was capable of waiving his rights, and did so in an informed and independent manner[.]"

Accordingly, we overrule issue one.

## Compliance with Article 38.22 section 3(a)(3)—Inaudible Portions of Statement

In issue two, appellant contends the trial court erred in denying his motion to suppress, arguing that the "inaudible" portions of the videotaped statement violate Article 38.22 section 3(a)(3), which provides:

(a) No oral or sign language statement of an accused made as a result of custodial interrogation in a criminal proceeding shall be admissible against the accused in a criminal proceeding unless . . .

(b) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered[.]

13

TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(3). Essentially, appellant argues that the recording device used was incapable of making an accurate recording because portions of appellant's statement are inaudible.

*Findings of Fact and Conclusions of Law*

The trial court made the following findings of fact, which are relevant to issue two:

> The interview room where the defendant was interviewed had a functioning video and audio recording system—the camera was mounted in the corner of two walls opposite where the interview was conducted and the microphone was mounted on the ceiling just forward of the camera[.]

> Prior to the interview Sergeant Sanderson and Officer Dodson activated the recording system and confirmed that it was operating properly[.]

> Minor portions of the defendant's statement were muffled[.]

> There is no evidence that the recording was tampered with or intentionally altered[.]

> There is no evidence that the microphone was intentional[ly] obscured by members of the Galveston Police Department[.]

> Defects in the recording were accidental in nature[.]

> The instances where the defendant's statements were muffled were few and far between[.]

> The muffled portions of the tape were caused by the tone, cadence, distance from the microphone, and volume at which the defendant spoke[.]

> The muffled portions of the recording were not substantial and concealed little of value[.]

14

The trial court made the following conclusions of law, which are also relevant to issue two:

> The Defendant's Statement to Sergeant Sanderson and Officer Dodson were made pursuant to the requirements of Article 38.22 of the Code of Criminal Procedure[.]
>
> The inaudible portions of the recording were not substantial[.]
>
> The inaudible portions of the tape did not render the recording untrustworthy[.]
>
> The recording of the interview was properly admitted as contemplated by Article 38.22 of the Code of Criminal procedure[.]
>
> The recording of the interview with the defendant was accurate as contemplated by Article 38.22 of the Code of Criminal procedure[.]
>
> The recording of the interview with the defendant was made on a machine capable of producing an accurate recording as contemplated by Article 38.22 of the Code of Criminal procedure[.]
>
> The recording of the interview with the defendant was trustworthy and reliable as contemplated by Article 38.22 of the Code of Criminal procedure[.]

*Analysis*

Appellant cites no authority, and we find none, for the proposition that audio recordings of statements by a defendant are inadmissible because portions of that recording are inaudible. To the contrary, courts have allowed taped statements before juries even though portions were inaudible if the statutory requirements of 38.22 are otherwise met. *See*, *e.g.*, *Burns v. State*, No. 07-15-00229-CR, 2016 WL

15

1391066, at *1–2 (Tex. App.—Amarillo Apr. 1, 2016, pet. ref'd) (mem. op., not designated for publication) (holding no abuse of discretion by trial court in admitting statement with inaudible portions because "much of it is quite audible," no evidence of alteration or tampering exists, and inaudible portions due to defendant's diction); *Herrera v. State*, No. 04-07-00033-CR, 2007 WL 3084688, at *3 (Tex. App.—San Antonio, Oct. 24, 2007, no pet.) (not designated for publication) (allowing taped interview in which portions were inaudible due "not to any type of malfunction of the recording device" but to defendant's mumbling), *Ojeda v. State*, No. 05-09-01343-CR, 2011 WL 3528189, at *12 (Tex. App.—Dallas, Aug. 12, 2011, no pet.) (mem. op., not designated for publication) (allowing recording when some of defendant's statements were inaudible and there was conflicting testimony at hearing from defendant and detective about defendant's statements, because defendant was provided warnings and waived them and never made clear request for lawyer); *see also Maldonado v. State*, 998 S.W.2d 239, 245 (Tex. Crim. App. 1999) (admitting tape-recorded confession that included two skips or anomalies when there was "adequate evidence" that the anomalies were "inadvertent and did not affect the overall reliability of the tape").

Here, much of the videotape is audible, and the record supports the trial court's finding that the inaudible portions were attributable to appellant's "soft-spoken" speech. Additionally, there is no evidence that the police exercised bad

16

faith in conducting the questioning or that the recording was altered in any way. As a result, we cannot conclude that the trial court's decision to admit the recording was an abuse of discretion.

We overrule issue two.

## RESTRAINTS DURING PUNISHMENT HEARING

In issue three, appellant, citing *Deck v. Missouri*, 544 U.S. 622 (2005), contends the trial court violated his Sixth Amendment right to counsel and the Fifth and Fourteenth Amendment rights to due process by compelling appellant to stand trial wearing handcuffs. However, *Deck* specifically applies to the guilt phase of a criminal trial and the penalty phase of capital offenses tried before a jury. *See* 544 U.S. at 632–33. Here, appellant did not appear in handcuffs before a jury; he was handcuffed during a trial to the bench during the punishment phase of a non-capital criminal trial. As such, the holding in *Deck* is not applicable.

Indeed, the Court of Criminal Appeals has noted that during the punishment phase of trial, a defendant has already been found guilty and is not entitled to a presumption of innocence. *See Marquez v. State*, 725 S.W.2d 217, 227 (Tex. Crim. App. 1987); *see also Deck*, 544 U.S. at 632 ("Hence, shackles do not undermine the jury's effort to apply that presumption"). That is especially true here because (1) appellant had already pleaded guilty, and (2) all punishment issues were tried to the bench. Appellant cites no authority prohibiting shackles under these circumstances.

17

Accordingly, we overrule appellant's Fifth and Fourteenth Amendment due process claims.

To the extent that appellant is claiming that his Sixth Amendment right to counsel was violated because, when shackled, he was unable to adequately assist counsel, the complaint is waived. When counsel objected to wearing handcuffs because it interfered with appellant's ability to review items and take notes, a deputy offered to bring appellant larger handcuffs with a chain on them so that appellant could write. In so holding, the trial court stated, "I'm going to honor the Sheriff's policy [of having defendants not appear in street clothes during punishment to the court]. But he will be in larger cuffs." Appellant made no further objection to the larger cuffs and no further complaint about his inability to take notes. As such, appellant acquiesced in the trial court's accommodation and failed to obtain an adverse ruling. *See Pena v. State*, No. 08-16-00236-CR, 2018 WL 5306926, at *22 (Tex. App.—Amarillo Oct. 26, 2018, no pet.) (mem. op., not designated for publication) (holding appellant waived his original request for week-long continuance when he acquiesced to trial court's action granting continuance for remainder of day). Accordingly, appellant's Sixth Amendment claim is waived.

We overrule issue three.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish.   TEX. R. APP. P. 47.2(b).